STONER v. WINTER et ux.

No. 32417.  Nov. 12, 1946.

Rehearing Denied March 4, 1947.

177 P. 2d 837.

Howell & Deupree, Richard R. Linn, and A. D. Howell, all of Oklahoma City, for plaintiff in error.

Robinson, Shipp & Robertson (by T. Murray Robinson), F. M. Dudley, and Raymond Tolbert, all of Oklahoma City, for defendants in error.

WELCH, J.  This action was instituted in the district court of Oklahoma county by Lizzie M. Stoner, as plaintiff, against August Winter, Minnie Winter, and others, to quiet title to an undivided one-eighth royalty interest in all oil, gas and other mineral produced under a certain 40-acre tract of land. From judgment for defendants, the plaintiff prosecutes this appeal.

Essential facts are that on September 7, 1919, plaintiff, then owning in fee simple, conveyed said tract to Melville Carter by warranty deed, which deed contained the following reservation or exception: "Except ⅛ royalty on all oil and gas produced on (description omitted) said ⅛ royalty being herein reserved by the said first party."

Thereafter Melville Carter conveyed the premises to one Bernhardt and his wife, and on May 1, 1930, the plaintiff and the Bernhardts, husband and wife, as lessors, executed an oil and gas lease on the premises. This lease reserved to lessors a royalty of one-eighth of oil produced. There was no statement in the lease as to the manner of division of that royalty between the lessors. There was then some discussion, mention or question as to ownership among the lessors of the royalty, bonus money

and delay rentals, but not to any great extent, and there was then nothing like an agreement as to any of it.

However, nearly four years later, on February 2, 1934, plaintiff and the Bernhardts executed a written agreement styled "Stipulation and Declaration of Interest" and providing as follows:

"This memorandum made and executed this 2nd day of February, 1934, by and between Lizzie M. Stoner, of Oklahoma City, Oklahoma, hereinafter called first party and Heinrich Christian Bernhardt, (otherwise known as Henry Bernhardt) and Rachel Bernhardt, second parties.

"Witnesseth:

"Whereas, on the 17th day of September, 1919, first party executed a warranty deed to Melville Carter covering, and including the following described property, to wit:

"Northeast Quarter of Section Nineteen, Fourteen North, Four West, Oklahoma County, Oklahoma, and

"Whereas, contained in said deed there was a reservation of certain oil rights pertaining to the southeast quarter of said Northeast Quarter of said Section which said reservation is as follows:

"Except—and ⅛ royalty on oil and gas produced on the south half of the east half of the above described premises said one-eighth royalty being herein reserved by said first party, and

"Whereas, on the first day of May, 1930, the said first party and second parties executed a certain oil and gas mining lease in favor of Magnolia Petroleum Company covering the following described land, southeast quarter of northeast quarter of section 19-4-4 Oklahoma County, Oklahoma, and

"Whereas, it is agreed by and between the parties hereto that the language contained in said reservation in said deed from first party to Melville Carter under date of September 17th, 1919, is ambiguous and susceptible to one of two constructions, and

"Whereas, the parties hereto desire to correct and clarify the ambiguous exception and /or reservation so contained in said deed.

"Now, therefore, for and in consideration of the mutual benefits of the parties hereto and a further consideration of One Dollar ($1.00) cash in hand paid first party by second parties and other good and valuable consideration, the receipt of which is hereby acknowledged, it is agreed by and between the parties hereto that by the terms of said exception and reservation contained in said deed from first party to Melville Carter under date of September 17th, 1919, the said first party reserved unto herself and she is the owner of an undivided one-eighth interest in and to all of the mineral rights and royalties in and under the southeast quarter (SE¼) of Northeast Quarter (NE¼) of Section 19-14 N-4W and that the first party by reason of such ownership is entitled to receive one-eighth part of all the delay rentals and likewise a one-eighth part of all the oil and/or gas royalties which is reserved to first and second parties as lessors in said oil and gas lease covering and including said southeast quarter of said Northeast Quarter of Section 19-14-4 in favor of Magnolia Petroleum Company above referred to, and likewise first party shall be entitled to a one-eighth part of all the future bonus which may be received by reason of any future oil and/or gas leases upon said premises.

"In witness whereof, the parties hereto have set their hand this the day and year first above written."

"Lizzie M. Stoner, First Party

"Heinrich Christian Bernhardt

"Rachel Bernhardt, Second Parties".

This stipulation and agreement was acknowledged before a notary public and filed for record and recorded before the rights of the third party defendants had attached.

Defendants contended the agreement was valid and binding on plaintiff, and in addition the adverse claimants to mineral interests asserted that they purchased their interests in good faith, believing that plaintiff only claimed and only owned a one-eighth interest in the minerals as reflected by the stipula-

tion; that plaintiff had slept on her rights and is guilty of laches; that plaintiff is estopped and cannot now change her position with reference to her ownership as to the defendants who had relied upon her written and filed stipulation of ownership.

Plaintiff contended in effect that she really owned a one-eighth royalty on all oil produced, that the stipulation above quoted should have no effect because she signed it believing that it did not change her interest in the minerals under said land; that it was obtained by fraud; that it was without consideration; that she acted as expeditiously as her means permitted and was not guilty of laches; that defendants were not bona fide purchasers for value.

Upon trial of the issues there was no dispute as to the material facts except upon the question raised by plaintiff's allegations of fraud in the execution of the stipulation and declaration of interest. The trial court made findings that there was no fraud in the execution of the stipulation; that the reservation clause in the deed was ambiguous or so treated by the parties; that plaintiff is estopped from claiming a greater interest than that set forth in the stipulation; that plaintiff was guilty of laches.

Upon this appeal six propositions in support of all assignments of error are presented.

In proposition four it is urged that the evidence shows that the signature of plaintiff on the stipulation and declaration of interest was procured by fraud and that the instrument is therefore void and of no force and effect.

The testimony shows that in 1934, at the time the stipulation was presented to plaintiff, she read it and her son read it; that she did not sign immediately, but went to town and there executed it before a notary public; that plaintiff is a high school graduate and that her son had attended high school; that Bernhardt could not read or write; that the

Bernhardts had commenced negotiations for a farm loan and that an attorney assisting them had prepared the stipulation; that a third party accompanied Bernhardt when the stipulation was presented.

Plaintiff and her son testified that said third party stated the purpose of the stipulation to be to clarify Bernhardt's interest in the minerals and that plaintiff's interest was not being changed or affected by the instrument. It is urged that plaintiff was induced to sign the instrument by the representation of said third party acting for Bernhardt.

It will be noted that the instrument sets forth in clear terms the plaintiff's share in the delay rentals under the lease and sets forth in clear terms her part in any future bonus for a future lease. These provisions may have induced plaintiff to execute the instrument.

From an examination of all the evidence pertaining to the transaction, we agree with the finding of the trial court that "Lizzie Stoner apparently was possessed of better ability to understand, to know what was in an instrument, and what was going on than was Mr. Bernhardt; that there was no clear, convincing and cogent evidence proving that any fraud was perpetrated on Lizzie Stoner in obtaining her signature on the stipulation." We think that the determination by the trial court that there was no fraud in the execution of the instrument is supported by the weight of the evidence.

In an action of equitable cognizance the findings and conclusions of the trial court will not be disturbed when not clearly against the weight of the evidence. Dungey et al. v. Dowdy et al., 195 Okla. 361, 159 P. 2d 231.

Plaintiff in propositions one, two, three, five, and six contends: That the reservation in the deed from plaintiff to Melville Carter was not ambiguous, and reserved in plaintiff the full one-

eighth royalty interest in the 40-acre tract in question; that the stipulation and declaration of interest, not being a deed or conveyance as required by law, was not sufficient to pass title to the one-eighth royalty on all oil and gas produced reserved by plaintiff; that as the defendants acquired no legal title as to the one-eighth (⅛) royalty on all oil and gas produced," they could not be bona fide purchasers; that plaintiff is not estopped from asserting her rights in the property herein involved; that plaintiff is not barred by laches.

In support of the contention that the reservation in the deed was not ambiguous, plaintiff cites Carroll et al. v. Bowen et al., 180 Okla. 215, 68 P. 2d 773.

That case was decided in 1937, and if the deed of 1919 was before this court for interpretation, and standing alone, the reservation clause might be held to be definite and not ambiguous, but in this case we must note that the plaintiff, grantor in the deed, and the grantee's successor in interest agreed in writing that the reservation was ambiguous, and we should not ignore the statement in the written agreement that "the parties hereto desire to correct and clearify the ambiguous exception and/or reservation so contained in said deed." The instrument sets forth in clear and unmistakable terms the agreement of the parties with respect to the rights of the grantor under the reservations clause. Under such circumstances we think the agreement that the reservation was ambiguous should not be disturbed and that the settlement of the parties should be supported.

In Young v. Stephenson et al., 82 Okla. 239, 200 P. 225, it was said:

"This court, in a long line of decisions, has announced the following rule:

" 'Voluntary settlements between parties in respect to their rights, where all have the same knowledge or means of obtaining knowledge concerning the circumstances involving their rights, and there are no fraud, misrepresentations, concealments, or other misleading incidents, are so favored that a settlement of their differences must stand and be enforced although the settlement made by the parties in their agreement might not be that which the court would have decreed to be, had the controversy been brought before it for decision."

In Cornbleth v. Allen, 80 Cal. App. 459, 251 P. 87, the California court said:

"Where, through mutual mistake, conditions have been omitted from a deed, it is competent for equity to supply the omission (cited cases) and the same result might be extrajudicially effected by the written agreement of the parties."

As stated in the agreement, the parties in 1930 executed an oil and gas lease to Magnolia Petroleum Company. If in order to clarify their rights under the lease the parties had instituted an action in equity to correct or reform the deed to correct and show the intendments of the reservation clause, we cannot perceive wherein the rights of the oil company could be affected, since all parties signed their lease, and see no reason why equity would not reform the deed to show the rights intended to be reserved unto the grantor in both the production and in lease bonus and rentals.

The general rule is stated in 26 C. J. S. p. 222, paragraph 31, that:

"Where there is no fraud and the rights of third persons have not intervened, and equity could have reformed the deed, it may be amended by a subsequent instrument so as to effectuate the intention of the parties."

The deed as amended by the subsequent instrument reserved to plaintiff a one-eighth interest in the mineral rights in the 40-acre tract involved. Plaintiff's prayer for judgment quieting title to a one-eighth royalty on all oil and gas produced on said tract was properly denied.

The judgment of the trial court in favor of defendants is affirmed.

GIBSON, C. J., HURST, V. C. J., and RILEY and BAYLESS, JJ., concur.