## In re RIBOZYME PHARMACEUTICALS, INC. SECURITIES LITIGATION

**This Document Relates to: 00–MK–0017, 00–MK–0002, 99–MK–2423.**

**No. 99–MK–2235(MJW).**

United States District Court, D. Colorado.

July 15, 2002.

Robert F. Hill, John F. Walsh, III, Jennifer H. Hunt, Hill & Robbins, P.C., Denver, CO, Edward Korsinsky, Russell H. Beatie, Daniel A. Osborn, Beatie & Osborn L.L.P., New York City, Harold B. Obstfeld, Harold B. Obstfeld, P.C., New York City, for Mark Adler.

Frederick J. Baumann, Scott Mark Browning, Craig Richard Welling, Rothgerber, Johnson & Lyons, LLP, Denver, CO, Boris Feldman, Douglas J. Clark, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for Ribozyme Pharmaceuticals, Inc., Ralph E. Christoffersen.

## MEMORANDUM OPINION AND ORDER

KRIEGER, District Judge.

This matter came before me on the Defendants' Motion for Summary Judgment and the Plaintiffs' Motion for Partial Summary Judgment (Motions). I reviewed the Motions, briefs and supplementary materials submitted and, after considering the parties' oral arguments presented on May 15, 2002, rendered an oral ruling denying both Motions. This Memorandum Opinion is issued in supplementation of that ruling.

### I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### II. MATERIAL FACTS

For purposes of these Motions, the following facts are material.[1] This case in-

---

1. The lengthy history of this case has been recounted in previous published decisions.

volves a class action[2] brought on behalf of all persons who purchased common stock of Ribozyme Pharmaceuticals, Inc., ("Ribozyme") between the close of trading on November 15, 1999, and the close of trading on November 17, 1999. Defendant Ribozyme is a Delaware corporation with its principal executive offices in Colorado. Defendant Ralph E. Christoffersen ("Christoffersen"), a resident of Colorado, has been the Chief Executive Officer, President and Director of Ribozyme since 1992.

In collaboration with Chiron Corporation ("Chiron"), Ribozyme began developing a new drug, Angiozyme, designed to inhibit the production of a specific protein and, potentially, to restrict or halt the development or spread of certain types of cancer. On November 15, 1999, Riboyzme issued a media advisory entitled "Colorado Pharmaceutical Co., Makes Drug History," (November 15 Media Advisory), announcing a press conference scheduled for November 17, 1999, which included the statement that "RPI CEO & President, Ralph E. Christoffersen, Ph.D., and other senior RPI staff, will explain Angiozyme and its recent history-making leap, an achievement which may be of great significance to cancer patients everywhere."

On the following day, November 16, 1999, the price of a share of Ribozyme stock, which was traded on NASDAQ, opened at $13.625 after closing the previous night at $10.0625. The share price continued to rise, reaching a price of $22.00 within an hour and twenty-five minutes of the market opening. Then, trading of Ribozyme stock was halted and repre-

sentatives of Chiron Corporation issued statements of clarification which Ribozyme followed with a press release. At the close of trading on November 16, 1999, the price of Ribozyme stock had dropped to $12.25.

This action was filed shortly thereafter, naming Ribozyme and Christofferrsen as Defendants. In it, Plaintiffs allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act, claiming that the November 15 Media Advisory was a misleading statement made in connection with the purchase or sale of securities either with the intent to defraud or, at least, in a reckless manner. For purposes of these Motions, the parties agree that the individually named Plaintiffs relied upon the misleading statement. The parties dispute, however, whether the class Plaintiffs relied upon the market to their detriment, the detriment being the precipitous increase and subsequent drop in the price of Ribozyme stock as a result of the public statements made by representatives of Ribozyme and Chiron.

## III. ISSUES PRESENTED

The parties have filed cross motions requesting summary judgment pursuant to the Federal Rules of Civil Procedure. The Plaintiffs request partial summary judgment on the issue of liability. The Defendants request summary judgment on all issues, arguing that Plaintiffs have insufficient evidence to prove the elements of scienter and reliance necessary to establish a *prima facie* violation of Section 10(b) of the Exchange Act. I find that there are factual issues in dispute as to the following: (1) whether the Media Advisory issued on November 15 was misleading and,

---

See, *In re Ribozyme Pharmaceuticals, Inc., Securities Litigation,* 205 F.R.D. 572 (D.Colo. 2001); *In re Ribozyme Pharmaceuticals, Inc., Securities Litigation,* 119 F.Supp.2d 1156 (D.Colo.2000); *In re Ribozyme Pharmaceuticals, Inc., Securities Litigation,* 192 F.R.D. 656 (D.Colo.2000).

**2.** There are five named Plaintiffs and a class of Plaintiffs certified pursuant to FED.R. CIV. P. 23 by Order dated January 25, 2000. The action actually consists of four matters jointly administered under Case No. 99–MK–2235 (MJW).

if so, whether this was by intention or negligence on the part of the Defendants; and (2) whether the Plaintiffs relied upon the market to their detriment. Therefore, the Motions are **DENIED**.

## IV. ANALYSIS

### A. The Summary Judgment Formula.

Determination of claims or defenses on their merits but without a trial is governed by Rule 56 of the Federal Rules of Civil Procedure. In this district, there is a prevalent practice of filing Rule 56 motions in almost every civil action.[3] Such motions may be intended to flush out an opponent's case, to try to educate the judge, to knock out various legal theories premised on a single underlying fact scenario, or to tip the negotiating table. However, Rule 56 motions are not appropriate in every action. Indeed, it is the rare case where a Rule 56 motion should be filed. Proper and skillful use of Rule 56 requires counsel to engage in the same thorough legal analysis as would be required of a presentation of a claim or defense at trial. Because the inappropriate and overuse of Rule 56 motions delays the progress of civil litigation,[4] a review of the purpose and application of Rule 56 may prove helpful.

The intended purpose of Rule 56 is to facilitate the entry of a judgment without a trial. The civil legal process favors factual dispute resolution by live testimony presented at a trial; summary determination based solely on documentary evidence short circuits that process. Therefore, under Rule 56, the fundamental issue is whether a trial is necessary.[5] A trial is necessary if there are material factual issues to be resolved.

Rule 56 expressly authorizes summary adjudication "when there is no genuine dispute as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). This standard requires a court to make two distinct determinations; one as a prerequisite to the other. The first determination is whether there is a genuine dispute as to any issue of material fact.[6] If there is such a dispute, the motion must be denied. Only when all material facts are undisputed can a court move to the second determination, that of applying the law to the undisputed facts to enter a judgment.[7]

### 1. What is a Material Factual Issue?

Substantive law frames the material facts and factual issues by specifying the elements that must be proved to establish a claim or defense, setting the standard of proof and identifying the party with the burden of proof.[8] Material issues may pertain to a specific fact (such as whether an event occurred) or may relate to the significance or import of certain facts (such as whether the facts demonstrate intent).

---

3. *Focus*, FACULTY OF FED. ADVOC. (Faculty of Federal Advocates Newsletter, Denver, Colo.), June, 2002, at Vol. 5, No. 2.

4. *See* Bernice B. Donald and William C. Plouffe, Jr., *The Summary Judgment Process: When the Solution Becomes Part of the Problem*, 194 F.R.D. 262 (1999).

5. *See White v. York Intern. Corp.*, 45 F.3d 357, 359 (10th Cir.1995).

6. FED.R.CIV.P. 56(c).

7. It is important to note in this regard that if there are no disputed factual issues allowing the motion for summary judgment to be granted, this does not guarantee entry of judgment for the moving party. Application of the law to the undisputed facts may result in judgment for the party opposing the motion. *See* CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, *Federal Practice & Procedure*, Civil 3d, § 2725.

8. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir.1989).

However, not all facts relevant in a lawsuit are material to a Rule 56 motion. The material facts are only those which tend to prove or disprove an element of the subject claim or defense.[9] Thus, to isolate the factual issues pertinent to the determination of a particular Rule 56 motion, it is essential to derive the elements of the claim or defense from the governing substantive law. For example, assertion of federal securities claims are subject to the one/three year limitations structure that requires an action to be filed within one year after the plaintiff has notice of the violation and not more than three years after the violation occurred. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991); *Anixter v. Home-Stake Production Co.*, 947 F.2d 897, 899 (10th Cir.1991), *vacated on other grounds*, 503 U.S. 978, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992). When asserting this statute of limitations defense, a defendant must establish the date the plaintiff had notice of the violation, the date the alleged violation took place, and that the action was filed beyond the applicable statutory period. Any other facts pertaining to the alleged security violation are immaterial for this purpose.

## 2. What is a Genuine Dispute?

A factual dispute is "genuine" for purposes of Rule 56 when the evidence presented in support and opposition to the motion is so contradictory that, if presented at trial, a reasonable jury could return a verdict for either party.[10] The test of genuineness measures the extent or degree of the factual dispute.[11] A scintilla of contrary evidence does not create a genuine dispute, nor does reliance upon the allegations in a party's pleadings. A genuine dispute means that the party opposing the Rule 56 motion has produced enough contrary evidence that had such evidence been presented at trial, no directed verdict could be entered in accordance with FED. R.CIV.P. 50(a). According to Rule 50(a), a trial judge may direct a verdict if the governing law applied to the evidence can yield only one outcome.[12] If reasonable minds can differ as to the import or the weight of the evidence, a verdict cannot be directed[13] and, by analogy, a summary judgment cannot be entered.

There is a temptation with regard to Rule 56 motions for parties to argue about the significance or weight of the evidence they present. They assert, from contrary perspectives, that the facts are undisputed. Often, the mere difference in characterization of the facts demonstrates a genuine dispute. But in addition, this approach confuses summary adjudication with a closing argument at trial. It is not the judge's function to weigh the evidence or to determine the truth of the matter at issue in considering a Rule 56 motion.

**9.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505.

**10.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505.

**11.** Whether a dispute is genuine depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. 2505; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir.2000), *cert de-*

*nied,*531 U.S. 876, 121 S.Ct. 182, 148 L.Ed.2d 125; *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373 (10th Cir.1980).

**12.** *Brady v. Southern R. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 88 L.Ed. 239 (1943), cited in *Anderson v. Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505.

**13.** *Wilkerson v. McCarthy*, 336 U.S. 53, 62, 69 S.Ct. 413, 93 L.Ed. 497 (1949) cited in *Anderson v. Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. 2505.

When the parties disagree about a material fact or about the significance and relationship of the factual events, the role of the judge is to test the "genuineness" of the dispute.

Under Rule 56, each party must produce the same quality and quantity of evidence as would be required of that party to submit the issue to a jury. Therefore, determining whether there is a genuine dispute, a court focuses upon the burden and the standard of proof which would apply at trial. For example,

> If the defendant in a run-of-the-mill civil case moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"Whether there is [evidence] upon which the jury can properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed".[14]

This test is applied in two ways, depending upon whether the party moving under Rule 56 has the burden of proof.

### a. When the Movant has Burden of Proof.

If the movant has the burden of proof, the movant must establish every element of its claim or defense by sufficient, competent evidence to set forth a *prima facie* case.[15] Once the moving party has met its burden, to avoid summary judgment the responding party must demonstrate that there is a genuine factual dispute with regard to some element that the moving party is obligated to prove. This is done by presenting sufficient, contradictory evidence which, if presented at trial, would allow a jury to return a verdict in the responding party's favor.[16] The responding party cannot rest on its pleadings but, instead, must set forth specific facts by competent evidence, and a court is required to construe all inferences in favor of the respondent[17] so as to preserve the possibility of trial.

### b. When the Movant Does Not Have the Burden of Proof.

If the party who files the Rule 56 motion does not have the burden of proof at trial, it must point to an absence of evidence in the record to support the elements of the claim or defense which the other party is obligated to prove. The movant essentially forces the respondent to present sufficient, competent evidence to establish a *prima facie* case. If the respondent fails to present competent evidence to establish every element of its claim or defense, entry of summary judgment in favor of the movant is appropriate because the respondent cannot carry its burden of proof.

**14.** *Anderson v. Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505 (quoting *Schuylkill and Dauphin Imp. Co. v. Munson,* 14 Wall. 442, 81 U.S. 442, 447, 20 L.Ed. 867 (1871)).

**15.** Fed.R.Civ.P. 56(c) and (e). This is true even if there is no response to the plaintiff's motion. See CHARLES A. WRIGHT, ARTHUR R.

MILLER & MARY KAY KANE, *Federal Practic and Procedure,* Civil 3d, § 2727.

**16.** *Bacchus Indus. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991).

**17.** *Perry v. Woodward,* 199 F.3d 1126, 1131 (10th Cir.1999).

Conversely, if the respondent presents sufficient evidence to establish every element of its case, a genuine dispute is demonstrated requiring a trial.

In summary, before I can grant either pending Rule 56 motion, I must conclude that no trial is necessary because there is no issue of material fact for a jury to determine.[18] The filing of cross motions does not mean that the material facts are undisputed even if the parties focus on the same claim or defense. Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently.[19]

## B. Plaintiffs' Motion for Partial Summary Judgment.

■ To establish a securities fraud violation, the Plaintiffs must prove (1) that the Defendants made an untrue statement of material fact, or failed to state a material fact; (2) that the conduct occurred in connection with the purchase or sale of a security; (3) that the Defendants made the statement or omission with scienter [20]; and (4) that Plaintiff relied on the misrepresentation and sustained damages as a proximate result of the misrepresentation.[21] The burden is on the Plaintiffs to establish all four elements by a preponderance of the evidence.

■ In support of their motion for summary judgment, Plaintiffs set forth sufficient evidence to establish each of the foregoing elements, establishing a *prima facie* violation of Rule 10(b)(5). Accordingly, the burden shifted to the Defendants to establish a genuine factual dispute as to one or more of the elements. The Defendants submitted evidence which creates a genuine dispute as to whether the November 15 Media Release was misleading, whether such release was a result of recklessness (as compared to negligence), and whether the securities market operated efficiently enough that reliance by the class plaintiffs can be inferred. Therefore, there are factual issues which must be determined at trial and the Plaintiffs' Motion for Summary Judgment is **DENIED.**

18. Sometimes several legal theories are advanced based upon a single factual scenario and a party seeks a partial summary judgment as to one or more theories for recovery. If there is a genuine factual dispute that requires a trial on at least one theory, it is often unproductive to enter partial summary judgment as to alternative theories. Partial summary adjudication, other than that which will allow certification under Rule 54(b), results in an interlocutory order which can be reconsidered at trial. FED.R.CIV.P. 54(b). Rather than consider the sufficiency of the evidence to support particular legal theories twice, once on a Rule 56 motion and again at trial, it is often simpler, more expeditious and more economical in consuming parties' and judicial resources to address such arguments at trial in the context of a Rule 50 motion.

19. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1147 (10th Cir.2000) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir.1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.")).

20. "Recklessness" is sufficient scienter for a primary violation of § 10(b). *Anixter v. Home–Stake Production Company*, 77 F.3d 1215 (10th Cir.1996); *Hackbart v. Holmes*, 675 F.2d 1114, 1117 (10th Cir.1982) see also, *C.E. Carlson, Inc. v. S.E.C.*, 859 F.2d 1429, 1435 (10th Cir.1988) (citation omitted).

21. *See* Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); *Anixter*, 77F.3d at 1225 (citing *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir.1992))

## C. Defendant's Motion for Summary Judgment.

In its Motion for Summary Judgment the Defendants challenge the Plaintiffs' ability to prove the required elements of scienter and reliance.

First, based upon the recent Tenth Circuit decision in *City of Philadelphia*[22], the Defendant argues that, in order to establish the requisite scienter, the Plaintiffs must present evidence that the Defendants intended to mislead the public when they issued the November 15 Media Advisory. The Defendants' reliance upon *City of Philadelphia* for this proposition is misplaced. *City of Philadelphia* involved allegations of an omission or non-disclosure which came before the trial court on a motion to dismiss pursuant to FED. R.CIV.P. Rule 12(b)(6). In that context, the Tenth Circuit Court of Appeals held that, in order to establish a security fraud claim based on non-disclosure of information, a plaintiff must allege that the defendant knew of the potentially material fact and chose not to release it.

In this case the Plaintiffs' claim is not based upon non-disclosure of material information. Rather, the Plaintiffs allege that the information released by the Defendants was misleading. In this context (i.e., the release of misleading information) a plaintiff may rely upon either actual intent to mislead *or* recklessness to prove a Rule 10(b) violation.[23] If Plaintiffs were required to show that Defendants intended to mislead when issuing the November 15 Media Advisory, as the Defendants argue *City of Philadelphia* requires, the reference to recklessness[24] would be meaningless and the scienter element would require proof of actual intent in every case. I find no support for such a position in *City of Philadelphia*. Moreover, when the question of intent is disputed, summary judgment is rarely appropriate because its resolution involves many intangible factors, such as witness credibility, that are best left to the consideration of a fact finder after full trial.[25]

■ Viewing all factual inferences in the light most favorable to the non-movant, I find that a genuine factual dispute exists as to the Defendants' intent in releasing the statement. A jury must determine whether or not the release of the November 15 Media Advisory was a mistake, as contended by the Defendants, or whether it was a result of reckless behavior as contended by the Plaintiffs.

■ In addition, the Defendants contend that the Plaintiffs' proof is insufficient with regard to the element of reliance. The class Plaintiffs assert the "fraud on the market theory" to establish the element of reliance. *See Basic Inc. v. Levinson*, 485 U.S. 224, 241–45, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Defendants argue that the securities market did not react to the media release in an efficient manner

---

**22.** 264 F.3d 1245 (10th Cir.2001).

**23.** *Anixter*, 77 F.3d at 1232 ("While *Farlow v. Peat Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir.1992) can be read to support either reckless disregard or actual intent as the standard for scienter, it did not expressly overrule *Hackbart* and later Tenth Circuit decisions approve of the recklessness standard for primary violations.") (citations omitted).

**24.** Arguably, recklessness is behavior that lies somewhere between negligence and an intentional act. Indeed, in *City of Philadelphia*, the Court reiterated the standard for recklessness in the securities context as "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." 264 F.3d at 1265 (quotation omitted).

**25.** *See Buell Cabinet Company, Inc. v. Sudduth*, 608 F.2d 431, 433 (1979).

and, therefore, there is no presumption of reliance based on the fraud on the market theory. In assessing the efficiency of markets, a fact finder may consider a number of different factors, including whether the stock trades are at a high weekly volume, whether the securities analysts follow a report on the stock, whether the stock has market makers or arbitragers, whether the company is eligible to file SEC form S3's, and whether there are empirical facts showing a cause-and-effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price. In this case, the Plaintiffs assert that the market was efficient and the Defendants contend the contrary, both parties offering expert opinions to support their respective views.

As noted earlier, it is not the function of a court to weigh or compare the evidence if presented in determining a motion for summary judgment. I find that there is undisputed evidence that Ribozyme stock was traded on NASDAQ, that it had a relatively high weekly volume and at least one securities analyst followed it. Both expert witnesses acknowledge that the November 15 Media Advisory had some effect on the market, but they disagree as to the scope of the effect. I will not determine which of the two experts is correct but, instead, conclude that this creates a genuine factual dispute that a jury must determine.

Having found that the Plaintiffs presented sufficient evidence to establish the challenged elements of their *prima facie* case, there are genuine disputes as to material factual issues which must be determined at trial. The Defendants' Motion for Summary Judgment is therefore **DENIED.**

For the foregoing reasons,

**IT IS ORDERED** that:

1. Plaintiffs' Motion for Partial Summary Judgment (# 108) is **DENIED.**

2. Defendants' Motion for Summary Judgment (# 106) is **DENIED.**

3. The following facts are deemed established and shall be stated as stipulated facts at the time of trial:

(1) The Ribozyme common stock ("RPI") is traded over the NASDAQ system;

(2) The stock closed on Monday, November 15, 1999 at $10.06 per share;

(3) A media advisory was released by RPI or its agent on November 15, 1999, after the market had closed;

(4) Trading in RPI stock opened on November 16, 1999, at a price of $13.63;

(5) The price for RPI stock rose until it hit a high of approximately $22 per share at 10:24 a.m. on November 16, 1999. Trading was halted at 10:50 a.m.;

(6) During the halt, RPI and Chiron representatives released various public statements;

(7) Trading resumed at 12:20 p.m. on November 16, 1999. The price of the RPI common stock at the close of November 16, 1999, was at $12.25 per share.